UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JOE SANTO et al.,  
      Plaintiffs,

   - against -

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA et al.,

      Defendants.
------------------------------------------------------------ X

**MEMORANDUM & ORDER**

No. 07 CV 4735 (ERK) (RML)

KORMAN, J.:

  On November 13, 2007, Joe Santo ("Santo"), Mark Palumbo ("Palumbo"), Joe Germano ("Germano"), John Aquista ("Aquista"), Glenn Semioli ("Semioli"), and Rosario Prato ("Prato") (collectively "the plaintiffs") filed the instant action against Laborers' International Union of North America ("LIUNA"), Asphalt Workers' Local 1018 a/w Laborers' International Union of North America ("Local 1018"), Road Construction Workers' Local 1010 a/w Laborers' International Union of North America ("Local 1010"), Pavers and Road Builders District Council ("Pavers District Council"), and Vincent Masino as Trustee ("Masino") (collectively "the defendants").[1]

  The plaintiffs are current and former members of two local unions, Local 1018 and Local 1010. LIUNA is an international labor organization representing workers in the United States and Canada. Its governing documents, which bind LIUNA, its affiliates, and its members, include the LIUNA International Union Constitution ("IUC"), the Uniform District Council Constitution ("UDCC"), and the Uniform Local Union Constitution ("Local Constitution"). The

---

[1] The plaintiffs purport to bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the 1,300 former and current members of Local 1018 and Local 1010, but they have yet to move to certify a class.

Pavers District Council is an intermediate labor organization, between LIUNA and the two local unions, which is affiliated with LIUNA. And, at all relevant times, Local 1018 and Local 1010 were affiliated with LIUNA and the Pavers District Council. The Pavers District Council, Local 1018, and Local 1010 are thus all subordinates of LIUNA. The members of the Pavers District Council are delegates who are elected by the district council's affiliated local unions, such as Local 1018 and Local 1010. (IUC, Art. XIX, § 5, p. 53-54, attached as Ex. E to Marinovic Decl.)[2] At all relevant times, Masino was the trustee of Local 1018, Local 1010, and the Pavers District Council.[3]

The plaintiffs' complaint asserts six separate causes of action. The first three challenge the continuation of the trusteeships that were imposed on Local 1018, Local 1010, and the Pavers District Council, on the ground that their continuation violates (i) Title III of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq.*, (ii) the IUC, and (iii) Title I of the LMRDA, respectively. The fourth and fifth causes of action challenge the increase in the union members' working dues on the ground that this increase violated (i) the UDCC, incorporated by reference into the IUC and the Local Constitution, and (ii) Title I of the LMRDA. The sixth cause of action asserts that the defendants breached the duty of fair representation.

The defendants subsequently moved to dismiss the complaint, and the plaintiffs' third and sixth causes of action were dismissed pursuant to Magistrate Judge Robert M. Levy's March 27, 2009 Report and Recommendation, which this Court adopted on April 16, 2009.[4] The first

---

[2] Specifically, Article XIX, Section 5 of the IUC provides that "[t]he membership of the District Council shall consist of the delegates from affiliated Local Unions who have been properly and lawfully elected as such delegates and each affiliated Local Union shall be entitled to representation." (IUC, Art. XIX, § 5, p. 53-54, attached as Ex. E to Marinovic Decl.)
[3] Masino is also a LIUNA Vice President and the New England Assistant Regional Manager.
[4] The plaintiffs' sixth cause of action was dismissed, except for the claim contained in paragraph 106(d) of the complaint. The plaintiffs, however, later withdrew this claim on their own.

and second causes of action, alleging the unlawful continuation of the trusteeships imposed on Local 1018, Local 1010, and the Pavers District Council, were subsequently mooted by the merger of Local 1018 and Local 1010 on August 26, 2009 and the lifting of the remaining trusteeships.[5]

Thus, on the parties' cross-motions for summary judgment, only the plaintiffs' fourth and fifth causes of action challenging the dues increase are before this Court. Through these causes of action, the plaintiffs seek (i) injunctive relief, enjoining the defendants from deducting the increased amount of working dues from the local members' wages; (ii) declaratory relief, directing the defendants to comply with LIUNA's constitutional procedures for increasing dues; (iii) compensatory damages; and (iv) punitive damages.

## FACTS

### A. The Trusteeships

On May 9, 2005, LIUNA placed Local 1018 under an emergency trusteeship. Three days later, on May 12, 2005, LIUNA placed Local 1010 and the Pavers District Council under an emergency trusteeship. On the same days the trusteeships were imposed, LIUNA's General President Terence M. O'Sullivan appointed Masino as the emergency trustee of Local 1018, Local 1010, and the Pavers District Council, with the authority to designate deputy trustees.

As trustee, Masino appointed John Peters ("Peters") as one of his deputy trustees.[6] Masino remained the trustee of Local 1018 until its merger with Local 1010 on August 26, 2009. Masino remained the trustee of Local 1010 until December 2008. And Masino remained the trustee of the Pavers District Council until April 2010.

---

[5] As a result of the merger, Local 1018's charter was revoked, and the good-standing members of Local 1018 were transferred to Local 1010.
[6] Peters was later replaced by Keith Loscalzo.

### B. The Working Dues Increase

The members of Local 1018 and Local 1010 are required to pay both "working dues" and "monthly dues." Working dues and monthly dues are separate and distinct in amount. These dues are used to finance the operations of Local 1018 and Local 1010 and are also paid to LIUNA monthly.

In or about February or March 2006, Masino decided to increase the working dues for the members of Local 1018 and Local 1010.[7] And on July 1, 2006, while the trusteeships were still in place, the working dues for the members of Local 1018 and Local 1010 were increased. Before the increase, the working dues had been $0.75 per straight-time hour paid, $1.12 per one-and-a-half-time hour paid, and $1.50 per double-time hour paid. The working dues increased, however, to 4.5 percent of all straight-time wages paid, which was a 100 percent increase. The defendants explain that the dues were increased for the following reasons:

> (1) to meet costs incurred in increasing staff to represent the membership and protect the jurisdiction of Local 1010 and Local 1018; (2) to meet costs, including legal expenses, incurred defending Local 1010 and Local 1018 against raids on their memberships; (3) to finance organizing efforts; and (4) to bring dues in line with other LIUNA locals operating in the New York metropolitan area.

(Defs.' R. 56.1 Stmt. ¶ 43.)

The dues increase took effect without the vote of either the members of Local 1018 and Local 1010 or the elected delegates to the Pavers District Council. In Masino's view, however, he had the authority, as trustee of the Pavers District Council, to increase the union members' working dues without calling for such a vote. Masino believed that, as trustee, he held all of the power previously held by the delegates to the Pavers District Council.

---

[7] Masino testified that he discussed this decision "extensively" with Peters, his deputy trustee. He also discussed the dues increase with LIUNA's General Counsel, Michael Bearse. According to the defendants, Peters also discussed the dues increase with the accountants and attorneys for Local 1018, Local 1010, and the Pavers District Council.

The plaintiffs contend that the dues increase also took effect without any notice being given to the members of Local 1018 and Local 1010. The defendants, however, assert that from about January to July 2006—before the dues increase took effect—"informal" monthly meetings were held at which the dues increase was discussed, and no objections were raised by the members in attendance.[8] Although the plaintiffs claim that they received no notice of these meetings, the defendants state that the members of Local 1018 and Local 1010 received notice that such meetings were going to take place at a certain location but were not notified of the topics to be discussed. Peters testified that no minutes were kept of these meetings but that he "believe[s]" there were sign-in sheets. (Peters Tr. at 46:12-14, 48:8-10, attached as Ex. G to Ennis Decl.) Masino, however, testified that he did not know whether or not there were sign-in sheets.[9] (Masino Tr. at 73:10-13, attached as Ex. F to Ennis Decl.)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted "where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Both parties agree that there is no genuine dispute as to any material fact regarding the dues increase.

---

[8] Peters admitted that these meetings were not run in accordance with any union constitution. (Peters Tr. at 46:9-10, attached as Ex. G to Ennis Decl.)
[9] Masino explained that he was not present at these meetings but that Peters was. (Masino Tr. at 72:23-73:13, attached as Ex. F to Ennis Decl.)

B. Analysis

   1. LMRDA Claim

The plaintiffs assert that the July 1, 2006 increase in their working dues violated Title I of the LMRDA—specifically, Section 101(a)(3), 29 U.S.C. § 411(a)(3). The plaintiffs maintain that, despite the imposition of the trusteeships, Masino did not have the authority to unilaterally increase their working dues and that the procedures laid out in Section 101(a)(3) of the LMRDA should have been followed. This is so, the plaintiffs argue, because union members retain their Title I rights, even in the face of a trusteeship. The defendants respond that, as the trustee of the Pavers District Council, Masino possessed the power to unilaterally increase the union members' working dues and that his doing so was in compliance with the LMRDA. The question is thus whether, consistent with Section 101(a)(3) of the LMRDA, the trustee of a non-local labor organization (such as a district council) can unilaterally increase the dues of the members of its affiliated local unions, also in trusteeship, without holding a vote, either of the local unions' members or of their elected representatives.

The LMRDA "was the product of congressional concern with widespread abuses of power by union leadership." *Finnegan v. Leu*, 456 U.S. 431, 435 (1982). Its "primary objective" was to "ensur[e] that unions would be democratically governed and responsive to the will of their memberships." *Id.* at 436. Title I of the LMRDA, 29 U.S.C. §§ 411-415, the "Bill of Rights of Members of Labor Organizations," was "aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution." *Finnegan*, 456 U.S. at 435; *see also Hall v. Cole*, 412 U.S. 1, 7-8 (1973) ("Title I of the LMRDA . . . was specifically designed to promote the full and active participation by the rank and file in the affairs of the union . . . ." (footnote and internal quotation marks omitted)); *Burroughs v. Operating Eng'rs*

*Local Union No. 3*, 686 F.2d 723, 727 (9th Cir. 1982) ("The guaranty of a democratic union organization provided by section 101 [of the LMRDA] was designed to shield the union membership from arbitrary, autocratic, and despotic control by union officers and leaders.").

Sections 101(a)(1) and 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(1), (2), guarantee union members equal voting rights and free speech and assembly rights, respectively. 29 U.S.C. § 411(a)(1), (2). Section 101(a)(3), 29 U.S.C. § 411(a)(3)—the provision at issue here—governs the procedures for increasing union members' dues, laying out the exclusive methods by which such increases can take place. As the Second Circuit has explained, "Section 101(a)(3) is intended to insure that dues will not be imposed on union members by the mere fiat of their officers." *King v. Randazzo*, 346 F.2d 307, 309 (2d Cir. 1965); *see also id.* at 309-10 ("[T]he evident purpose of § 101(a)(3) . . . is to place union dues more directly under the control of the union membership."); *Sertic v. Cuyahoga, Lake, Geauga & Ashtabula Counties Carpenters Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 423 F.2d 515, 521 (6th Cir. 1970) ("Union members are entitled under the [LMRDA] to the right of a meaningful vote on increases in dues or assessments."). The Ninth Circuit has similarly stated that "[t]he clear purpose of section 101(a)(3) . . . is to curb the potential for autocratic and unrepresentative rule of union officers by preventing the leadership of a union from imposing arbitrary financial exactions unilaterally on its membership." *Burroughs*, 686 F.2d at 728 (citation omitted). In other words, "Section 101(a)(3) was designed to vest control over increases in rates of dues in the union members, not the union management." *Id.*

Section 101(a)(3) is further broken down into two subsections: Section 101(a)(3)(A), which applies to dues increases by a *local* labor organization, and Section 101(a)(3)(B), which applies to dues increases by a *non-local* labor organization. Because the dues for the members of

Local 1018 and Local 1010 are established and regulated by the Pavers District Council, a non-local labor organization,[10] Section 101(a)(3)(B) governs how their dues can be increased.

Section 101(a)(3)(B) lays out three methods by which dues can be increased by a non-local labor organization:

> (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar

---

[10] Article XVIII, Section 8(c) of the IUC provides in part:

> Each Local Union shall fix and regulate the dues payable by its members in such amount as is lawful and necessary to carry out its objects, purposes and obligations . . . . In areas where District Councils exist, said dues shall be fixed and regulated as provided for in Article II, Section 2(e) and Article VIII, Section 2 of the Uniform District Council Constitution.

(IUC, Art. XVIII, § 8(c), p. 51, attached as Ex. E to Marinovic Decl.) Article VIII, Section 1 of the Local Constitution similarly provides:

> The initiation fees and dues to be paid by members and apprentice members to Local Unions affiliated with a District Council, shall be established and regulated by the District Council, in accordance with the provisions of Article II, Section 2(e) and Article VIII, Section 2 of the Uniform District Council Constitution.

(Local Constitution, Art. VIII, § 1, p. 95, attached as Ex. E to Marinovic Decl.) Article II, Section 2(e) of the UDCC provides that the Pavers District Council shall have the authority

> [t]o establish and regulate the amount of initiation fee and dues to be paid by members and apprentice members to its affiliated Local Unions within the limits provided in the International Union Constitution.

(UDCC, Art. II, § 2(e), p. 113, attached as Ex. E to Marinovic Decl.) Article VIII, Section 2 of the UDCC provides:

> When an increase in initiation fees or dues payable by members and apprentice members to affiliated Local Unions is contemplated, the District Council shall convene a special convention to review the dues structure of all affiliated Local Unions and to determine whether an increase is warranted for one or more affiliated Local Unions. Written notice of such special convention shall be mailed to its affiliated Local Unions not less than thirty days from the date on which it proposes to take such action. The notice shall outline the date of the convention when the proposed increase is to be considered and voted upon by the delegates to the District Council, the date on which the contemplated increase is to go into effect and the grounds or reasons for such increase, in order that Local Unions may be informed and consider the matter at a meeting of their membership. The duly elected delegates to the District Council shall be the delegates to this convention. A majority vote of the delegates at such convention of the District Council shall be required, and when so tallied shall be effective for and on behalf of all affiliated Local Unions.

(UDCC, Art. VIII, § 2, p. 125-26, attached as Ex. E to Marinovic Decl.)

8

> governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided*, That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.

29 U.S.C. § 411(a)(3)(B). The UDCC, which governs the Pavers District Council, has adopted the first of these three methods—known as the "convention" method—as the lawful method by which the dues of its affiliated locals' members can be increased. (UDCC, Art. VIII, § 2, p. 125-26, attached as Ex. E to Marinovic Decl.)

In *American Federation of Musicians v. Wittstein*, 379 U.S. 171 (1964), the Supreme Court described the right guaranteed by Section 101(a)(3)(B) as "a member's right to participate in deciding upon the rate of dues, initiation fees, and assessments." *Id.* at 181 (internal quotation marks omitted). The Court explained that Section 101(a)(3)(B) formed a part of the Title I framework "by requiring participation by all members, either directly or through their elected representatives, on certain union matters thought to be of special importance." *Id.*; *see also id.* at 182 ("Section 101(a)(3)(B) . . . authorizes a representative system of government and does not require a town meeting for action by an international or national union."). In short, the right guaranteed by Section 101(a)(3)(B) is a union member's right to participate in and vote on the decision to increase dues, either directly or through elected representatives. *See Patterson v. United Bhd. of Carpenters & Joiners of Am. AFL-CIO*, 906 F.2d 510, 512 (10th Cir. 1990) (per curiam) ("[Section 101(a)(3)] establishes the right of individual union members to participate in and vote, either directly or through representatives, on union decisions regarding dues and equivalent issues."); *Michelotti v. Air Line Pilots Ass'n*, 61 F.3d 13, 15 (7th Cir. 1995) ("[Section 101(a)(3)(B)] is intended to ensure that dues or assessments are not levied by unrepresentative union leaders. In other words, it is intended to bar taxation without representation.").

9

Federal courts have, therefore, held that this right is protected when a local union's elected delegates vote to increase the dues of that local union's members at a duly constituted convention. *See, e.g.*, *Mori v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers Local Lodge No. 6*, 653 F.2d 1279, 1285 (9th Cir. 1981) (holding that "the participation of delegates representing plaintiffs ensured their rights under [Section] 101(a)(3)(B), and there is no reason in this case to distrust the democratic process at work at the convention"); *Ranes v. Office Emps. Int'l Union, Local No. 28*, 317 F.2d 915, 918 (7th Cir. 1963) (holding that the plaintiff local union members received the protection of Section 101(a)(3) because their dues were increased "[a]t a duly constituted convention, at which [their local union] was represented by a delegation elected by its members"); *see also id.* (describing how "Congress has said that [the] purpose [of Section 101(a)(3)] . . . is served when union members have representation at the council table where dues structures are changed"). The case law thus makes clear that what matters is that union members be represented in some capacity when the decision to increase their dues is made. *See Michelotti*, 61 F.3d at 14-15 (upholding, as consistent with Section 101(a)(3)(B)(i)'s "convention" method, a dues increase approved at a meeting of a "master executive council" comprised of representatives elected by the union members).

Despite the clarity with which courts have described the right guaranteed by Section 101(a)(3)(B), they have yet to directly address how the imposition of a trusteeship affects this particular right. In *Sheet Metal Workers' International Ass'n v. Lynn*, 488 U.S. 347 (1989), however, the Supreme Court strongly suggested that Title I rights, such as that guaranteed by Section 101(a)(3)(B), are in no way diminished in the context of a trusteeship. *See id.* at 356-58. In *Sheet Metal*, the Supreme Court examined whether the removal of an elected business agent,

10

in retaliation for statements made at a union membership meeting in opposition to a dues increase sought by the union trustee, violated Section 101(a)(2) of the LMRDA—the free speech provision.[11]  488 U.S. at 349.  The Court ultimately held that this retaliatory removal did violate the free speech provision, and that this was so despite the imposition of a trusteeship.  *Id.* at 355-57.  Commenting on the trusteeship's relevance, the Court stated:

> [W]e find nothing in the language of the LMRDA or its legislative history to suggest that Congress intended Title I rights to fall by the wayside whenever a trusteeship is imposed.  Had Congress contemplated such a result, we would expect to find some discussion of it in the text of the LMRDA or its legislative history.  Given Congress' silence on this point, *a trustee's authority under Title III ordinarily should be construed in a manner consistent with the protections provided in Title I.*

*Id.* at 356-57 (emphasis added) (footnote omitted).  Although the Supreme Court's holding directly involved only the right guaranteed by Section 101(a)(2), its broad language is a powerful indication that *all* of the rights embodied in Title I—including the right guaranteed by Section 101(a)(3)(B)—retain their full force in the face of a trusteeship.

The Supreme Court, however, did not stop there.  It went on to discuss how a trusteeship also does not affect a local union member's right under Section 101(a)(3)*(A)* to vote on a dues increase.[12]  Albeit in dicta, the Court observed that "Section 101(a)(3) of Title I, 29 U.S.C. § 411(a)(3), guarantees to the members of a local union the right to vote on any dues increase, and, as petitioners conceded at oral argument, *this critical Title I right does not vanish with the imposition of a trusteeship*."  *Id.* at 357-58 (emphasis added) (footnote omitted).  Elaborating on this point, the Court explained that

---

[11] Notably, the trustee in *Sheet Metal* "[r]ecogniz[ed] that he lacked authority to impose a dues increase unilaterally," and so a special meeting was convened where the dues increase proposal could be put to a membership vote.  488 U.S. at 350.

[12] The Court addressed Section 101(a)(3)(A) because, unlike Local 1018 and Local 1010, dues increases for the local union in *Sheet Metal* were not regulated and established by a non-local labor organization, but rather by the local union itself.

> [a] trustee seeking to restore the financial stability of a local union through a dues increase thus is required to seek the approval of the union's members. In order to ensure that the union members' democratic right to decide on a dues proposal is meaningful, the right to exchange views on the advantages and disadvantages of such a measure must be protected. A trustee should not be able to control the debate over an issue which, by statute, is *beyond his control*.

*Id.* at 358 (emphasis added). Although the Supreme Court limited its discussion to the right guaranteed by Section 101(a)(3)*(A)*, there is no principled reason—and the defendants fail to provide one—why the right guaranteed by Section 101(a)(3)*(B)* should be any less protected in the context of a trusteeship. Thus, despite the imposition of the trusteeships in this case, the members of Local 1018 and Local 1010 should have been permitted to participate in and vote on the decision to increase their dues—either directly or through their elected delegates to the Pavers District Council.

The defendants' position rests primarily on the notion that, with the imposition of trusteeships on Local 1018, Local 1010, and the Pavers District Council, there ceased being delegates to the Pavers District Council and that Masino, as trustee, possessed all of the authority of the Pavers District Council, including the authority to increase the dues of the members of its affiliated local unions. Therefore, the defendants argue, no vote was required before the dues could be increased. Rather, the "convention" method described in Section 101(a)(3)(B)(i) was fully satisfied "by Masino, as the trustee possessing the full authority of the Pavers District Council, sitting by himself and deciding on the proposed dues increase."[13] (Defs.' Reply 7.)

---

[13] The defendants are wrong in stating that, by not allowing Masino to unilaterally increase the local union members' dues, the Pavers District Council was deprived of its "right" or "power" to increase dues and to thus acquire funds for its affiliated local unions. (Defs.' Opp. 3, 10, 11.) Whether or not the Pavers District Council has such a right, a holding that Masino's conduct violated Section 101(a)(3)(B) does not mean that district councils and local unions in trusteeship are unable to raise funds. Rather, as the Supreme Court made clear in *Sheet Metal*, the trustee must simply seek the approval of the local unions' members or, in the case of a district council, of its elected delegates. *See* 488 U.S. at 358.

Nevertheless, although the authority of a union trustee is broad,[14] *Sheet Metal* leaves no room for doubt that such authority cannot be exercised in a manner that is inconsistent with union members' Title I rights. 488 U.S. at 356-57.

In support of their argument that Masino's conduct was lawful, the defendants also cite to the LMRDA's definition of "trusteeship," which is "any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution and bylaws," 29 U.S.C. § 402(h), emphasizing the words "suspends the autonomy." (Defs.' Mem. of Law 28.) The defendants fail to recognize, however, that this same definition of "trusteeship," in effect at the time *Sheet Metal* was decided, did not affect the Supreme Court's conclusion that Congress did *not* intend Title I rights to "fall by the wayside whenever a trusteeship is imposed." 488 U.S. at 356.

While it may be true that the imposition of trusteeships on Local 1018 and Local 1010 meant that these local unions no longer had delegates to the Pavers District Council,[15] this does not justify depriving the union members of their right to participate in and vote on the decision to increase their dues. Rather, as the plaintiffs suggest, Masino should have found some way for the union members' right under Section 101(a)(3) to remain protected, despite the trusteeships. (Pls.' Reply 8 ("Defendants have . . . failed to explain why Masino did not simply call for the election of new delegates to vote on the dues increase or why, in the absence of elected

---

[14] In describing a trustee's authority, the IUC provides that "[t]he trustee . . . shall be authorized to take full charge of the affairs of the subordinate body [i.e., the district council or local union], to appoint temporary officers or employees at any time during the trusteeship . . . , and to take such other action as, in the trustee's . . . judgment, is necessary for the preservation of the subordinate body and its interests." (IUC, Art. IX, § 7, p. 34, attached as Ex. E to Marinovic Decl.) Whatever "such other action" may mean, *Sheet Metal* makes clear that it cannot mean the authority to deprive union members of their right as guaranteed by Section 101(a)(3)(B). Indeed, Section 101(b) provides that "[a]ny provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall have no force and effect." 29 U.S.C. § 411(b).

[15] The IUC provides that, "[d]uring the period of trusteeship, all the officers and delegates of the subordinate body are relieved of their particular trust." (IUC, Art. IX, § 7, p. 34, attached as Ex. E to Marinovic Decl.)

delegates, he did not propose some other democratic process for increasing dues consistent with the objectives of Title I, including a direct vote by union members.").)[16]

As the defendants themselves recognize, the Supreme Court has "cautioned against a literal reading of congressional labor legislation," including the LMRDA. *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 468 (1968) (cited in Defs.' Mem. of Law 27). The Court has counseled that the legislation's wording should instead be considered "against the background of its legislative history and in the light of the general objectives Congress sought to achieve." *Id.* Because "the evident purpose of § 101(a)(3) . . . is to place union dues more directly under the control of the union *membership*," *King*, 346 F.2d at 309-10 (emphasis added), the members of Local 1018 and Local 1010 should have been given the opportunity to *in some way* participate in and vote on the dues-increase decision, even though strict compliance with Section 101(a)(3)(B)(i)'s "convention" method was not feasible. And the "informal" monthly meetings at which no vote took place were insufficient to protect the union members' participation and voting rights.

The defendants seem to suggest that, if a vote had been held, Masino's efforts to raise funds for the locals would have been thwarted because the union members would have been under the "potential continuing influence" of the allegedly corrupt former leaders of the locals. (*See* Defs.' Reply 17.) Such a vote, the defendants contend, would reflect "only the appearance of a democratic vote of a membership that in fact does not represent the members' uncoerced

---

[16] In a letter filed after the summary judgment motions were briefed, the defendants argue that both of the actions the plaintiffs suggest Masino could have taken would have violated the LIUNA constitutions. (*See* Defs.' Letter dated Dec. 15, 2011 at 1.) Specifically, the defendants assert that holding a direct vote of the union members would have violated the provision of the Local Constitution requiring that a district council set the level of dues for a local union affiliated with a district council, and that calling for the election of new delegates would have violated the provision of the IUC stating that, during a trusteeship, all officers and delegates are removed from office. (*Id.* at 2.) Nevertheless, the LMRDA makes clear that, when a union constitution and Section 101 of the LMRDA conflict, the statute trumps. *See* 29 U.S.C. § 411(b) ("Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect."). In other words, the defendants' purported compliance with LIUNA's constitutions does not justify their violation of the LMRDA.

14

views." (*Id.*; *see also* Defs.' Letter dated Dec. 15, 2011 at 3 ("[A] vote free of the improper influence of the former officers . . . could not have been held prior to the dues increase.").) This argument would have some force if Masino had articulated the possibility of a corrupting influence as a reason for his not having held a vote on the dues increase and if a vote had been held and had failed. In sum, the working dues increase effectuated by Masino, without any kind of vote, is a violation of Section 101(a)(3)(B).

### 2. Union Constitution Claim

In addition to asserting a violation of Title I of the LMRDA, the plaintiffs also argue that the defendants violated the UDCC, incorporated by reference into the IUC and the Local Constitution, by failing to comply with the procedures for increasing dues laid out therein. The defendants, however, respond that this claim is barred because the plaintiffs failed to exhaust internal union remedies before bringing this claim in district court.

Article XVI, Section 2 of the IUC requires that union members exhaust intra-union remedies before bringing an action in district court.[17] Specifically, this section provides:

> No member shall bring or cause to be brought in any court, whether in law or equity, any action against a Local Union, District Council or the International Union or their officers, representatives or employees, in any matter involving an issue arising out of or related to the member's membership, which is remediable within the framework of the International Union, Local Union or District Council Constitution without having first exhausted all of the remedies available under the aforesaid Constitutions.

(IUC, Art. XVI, § 2, p. 47, attached as Ex. E to Marinovic Decl.)

With regard to LIUNA's internal procedures, the IUC states that,

> [i]n the interim periods between regular Conventions of the International Union, all judicial authority not otherwise vested in the Independent Hearing Officer,

---

[17] The LMRDA expressly permits unions to require such exhaustion before an action can be brought in district court. *See* 29 U.S.C. § 411(a)(4) ("[A]ny such [union] member may be required to exhaust reasonable hearing procedures . . . within such [labor] organization, before instituting legal or administrative proceedings against such organizations or any officer thereof.").

> Appellate Officer, Elections Officer, or Special Election Officer shall reside in the General Executive Board of the International Union; in pursuance of such authority it may impose such judgment or take such action as it deems warranted or appropriate over any circumstance concerning which such action is taken.

(IUC, Art. VIII, § 2(a-vi), p. 28-29, attached as Ex. E to Marinovic Decl.) In other words, a union member can bring an action before the LIUNA General Executive Board, and, as a subsequent section of Article VIII of the IUC explains, the General Executive Board's ruling can then be appealed to the LIUNA Convention. (IUC, Art. VIII, § 2(a-viii), p. 29, attached as Ex. E to Marinovic Decl.)[18]

As the Supreme Court has explained, "courts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). In other words, the exhaustion requirement is not absolute. *Thompson v. Local 144/S.E.I.U*, No. 99 CIV 11503, 2001 U.S. Dist. LEXIS 3257, at *6 (S.D.N.Y. Mar. 26, 2001). But, "[i]n deciding whether to apply the exhaustion doctrine, a court 'must balance the right of union members to institute suit against the policy of judicial noninterference in union affairs.'" *Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 186 (2d Cir. 1998) (quoting *Johnson v. General Motors*, 641 F.2d 1075, 1079 (2d Cir. 1981)). A court must also consider "whether the available procedures are adequate and reasonable in light of the facts of the particular case." *Henry v.*

---

[18] Specifically, Article VIII, Section 2(a-viii) of the IUC says that

> [a]ny member or subordinate body aggrieved by a decision, direction, ruling or order of the General Executive Board shall have the right to appeal therefrom to the Convention of the International Union, provided, within thirty days from the date of notice of said decision, direction, ruling or order, from the General Secretary-Treasurer, the aggrieved member or subordinate body shall file an appeal in writing with the International Union, addressed to the General Secretary-Treasurer at Headquarters.

(IUC, Art. VIII, § 2(a-viii), p. 29, attached as Ex. E to Marinovic Decl.)

*Cmty. Res. Ctr., Inc.*, No. 95 Civ. 5480, 1996 U.S. Dist. LEXIS 6414, at *18 (S.D.N.Y. May 10, 1996) (quoting *Johnson*, 641 F.2d at 1079).

> There are three factors that a court should consider in conducting the exhaustion inquiry:
>
> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks . . . ; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton*, 451 U.S. at 689. The burden is on the union to establish that its internal procedures meet these requirements. *Maddalone*, 152 F.3d at 186; *see also Thompson*, 2001 U.S. Dist. LEXIS 3257, at *7 ("Defendants have the burden of proving that their procedures are reasonable and not futile.").

Application of the three *Clayton* factors to the present case reveals that the plaintiffs' failure to exhaust internal union remedies should not be excused. As for the first factor, there is no evidence that LIUNA's officials were so hostile that a fair hearing on the plaintiffs' dues-increase claim was not possible. The plaintiffs simply state that, because Masino "knowingly" violated the UDCC when he increased the working dues and did so after speaking with LIUNA's General Counsel, challenging the dues increase through LIUNA's internal review process would have been futile. (Pls.' Opp. 22-23.) But this is insufficient evidence of union hostility. *Cf. Thompson*, 2001 U.S. Dist. LEXIS 3257, at *10 ("If the Court were to hold that exhaustion would be futile because internal remedies would be reviewed by the same organization whose actions were being challenged, [it] would amount to an exception that swallows the whole."). Although Masino may have knowingly disregarded the UDCC's requirements even after speaking to LIUNA's General Counsel, there is no evidence that the union officials handling

LIUNA's internal review process would have been hostile. *See Henry*, 1996 U.S. Dist. LEXIS 6414, at *23-24 (finding no hostility where there was no evidence that a union organizer's bias would have affected the outcome of the internal union appeal process).

As for the second factor, the plaintiffs allege that the defendants have failed to show that LIUNA's intra-union procedures would have afforded the plaintiffs adequate relief, given that the plaintiffs seek compensatory and punitive damages. While the parties seem to agree that, under Article VIII, Section 2(a-vi) of the IUC, LIUNA's internal review process could have awarded the plaintiffs compensatory damages (*see* Defs.' Mem. of Law 49-50; Pls.' Opp. 23-24), the plaintiffs argue that the defendants have failed to demonstrate that *punitive* damages were available through this process.

Although "punitive damages are available to deter malicious violations of the LMRDA," *Maddalone*, 152 F.3d at 186, the Second Circuit has made clear that "punitive damages generally may not be awarded in a . . . breach of contract action," *Drywall Tapers & Pointers of Greater N.Y. v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 36 F.3d 235, 240 (2d Cir. 1994). And since a union constitution is considered a contract between labor organizations, *Commer v. McEntee*, No. 00 Civ. 7913, 2006 WL 3262494, at *16 (S.D.N.Y. Nov. 9, 2006), punitive damages are not available for the plaintiffs' union constitution claim. There is, therefore, no evidence that LIUNA's internal review process would have afforded the plaintiffs inadequate relief. As for the third factor, the plaintiffs do not even argue that exhausting LIUNA's internal remedies would have unreasonably delayed their opportunity to seek relief in district court, and there is no evidence to that effect.

The plaintiffs do, however, contend that, because the working dues were increased during the trusteeships' existence, exhaustion of internal union remedies was not required. In support of

18

this proposition, the plaintiffs cite to cases holding that exhaustion of intra-union remedies is not required for actions seeking the dissolution of a trusteeship. *See Brush v. Hotel Emps. & Rest. Emps. Int'l Union*, 170 F. Supp. 2d 803, 806 (N.D. Ill. 2001); *C.A.P.E. Local Union 1983 v. Int'l Bhd. of Painters & Allied Trades*, 598 F. Supp. 1056, 1067 (D.N.J. 1984); *Schonfeld v. Raftery*, 271 F. Supp. 128, 145 (S.D.N.Y. 1967); *Monborne v. United Mine Workers of Am.*, 342 F. Supp. 718, 723 (W.D. Pa. 1972). The plaintiffs' union constitution claim, however, does not seek dissolution of the trusteeships, and none of the cases the plaintiffs cite—nor any that this Court can find—holds that exhaustion is not required in actions challenging dues increases effectuated during a trusteeship. The plaintiffs' argument is, therefore, without merit.

In short, the plaintiffs' claim that the dues increase violated LIUNA's constitutions is barred because the plaintiffs failed to exhaust LIUNA's internal remedies before bringing this claim in district court. None of the *Clayton* factors exist here, and the defendants have thus met their burden of establishing the applicability of the exhaustion defense.[19] And by requiring exhaustion, this Court "advance[s] the national labor policy of encouraging private resolution of contractual labor disputes." *Clayton*, 451 U.S. at 692.

## CONCLUSION

The plaintiffs' motion for summary judgment on the LMRDA claim is granted, and the defendants' cross-motion is denied. The defendants' motion for summary judgment on the union constitution claim is granted, and the plaintiffs' cross-motion is denied. I do no more than rule on the motions because the issue of damages is unresolved, and it is not clear to me that the plaintiffs are entitled to obtain a refund of the entire sum of dues imposed without a vote. They

---

[19] The defendants concede that failure to exhaust is not a defense with respect to the plaintiffs' LMRDA claim, even though they argued otherwise in their answer and motion to dismiss. (*See* Defs.' Reply 26 ("Plaintiffs' argument that they are not required to exhaust internal remedies with respect to their LMRDA claim is immaterial, as defendants do not now contend otherwise.").)

19

continued to receive the benefits of union membership during that period, and it seems clear that some increase was necessary. Indeed, the plaintiffs never sought to enjoin the collection of the dues.[20] Nor do they allege that they would not have voted to increase dues to some extent. I do no more than raise these issues and leave it to the parties to address.

**SO ORDERED.**

Brooklyn, New York
December 19, 2011

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge

---

[20] Two of the plaintiffs, Palumbo and Aquista, contend that, before they filed their complaint in district court, they contested the increase in working dues. They admit, however, that they do not possess any documentation regarding this alleged protest, and they fail to specify precisely how they contested the dues increase.